Good morning, your honors. John Lemon for felon Gerardo Bravo. Your honors, Mr. Bravo's conviction should be reversed first because when he waived his right to have someone represent him during his Feretta call the court conducted a defective Feretta inquiry. Counsel, when I listened to his remarks, or I didn't listen actually, I read the remarks, I saw the thing about Uniform Commercial Code, Title 2, and I thought, oh, there's a tax protester in custody with him. It was all the standard tax protester stuff. Why should that be treated as nuts rather than a prisoner who's not too smart buying some nonsense from some prisoner who thinks he's a little smarter? With respect to the second issue being the court's obligation to conduct an inquiry under Edwards, well, he may very well have been in custody with a tax protester. I mean, we don't know that, but just all of the stuff that he submitted was complete. Well, it's nonsense, but I don't know if it's crazy. Well, I think at a minimum here we have an obligation. What you want is evidence of mental illness such that he's not competent to waive counsel, and I'm not sure why spouting legal nonsense qualifies for that. Right. Well, I guess I'd like to focus on whether the court had an obligation to conduct an inquiry as to whether Mr. Bravo was competent to represent himself at trial. Where do you get the idea that the court has an obligation to do that? I see Edwards authorizes a court to disallow for self-representation, but I don't see anywhere where it requires the court to do that or even make that inquiry. Your Honor, this court has never said that there's an obligation, but I think that that's an issue that should be resolved now, frankly. So you agree that Edwards doesn't require it? Edwards doesn't say that you have to do that, no. And I think Ferguson actually suggests that maybe the district court doesn't have to, but we have, with respect to competence, we have an affirmative obligation under 4142 and under the Dreyer case, which I'm sure Your Honors are aware of, the district court has an obligation to sua sponte conduct a competency hearing if there's some basis in the record to warrant that. You don't challenge that he was competent to stand trial, though, right? No, I'm not. But what I'm suggesting is that it's incongruous and in fact completely irreconcilable that the court, on the one hand, would have an obligation to sua sponte conduct a competency evaluation if there's evidence to suggest that the defendant is not competent, but at the same time have no obligation whatsoever, once the court makes the competency finding, to let someone like Mr. Bravo denigrate the entire process by representing himself at trial when he's mentally unfit to do so. I'm sorry, you say it's incongruous, but I'm not sure I understand why. I'm sorry, it's inconsistent, but I don't see why. I just think that it's inconsistent that the court would be under an affirmative obligation. No, I understand you think it's inconsistent, but I am asking you why, so maybe you can persuade me that it's inconsistent. I mean, you think it's inconsistent is not very helpful. What's inconsistent about it? You could very well have a rule that says, look, when you're dealing with somebody's competence to stand trial, whether they're there enough to be able to participate in the proceedings, that's the kind of thing where the judge has indications that that might be lacking. He has a duty to inquire into it. But once you're past that threshold, there's a wide variety of what people consider to be goofy behavior that may or may not be mental illness. And, you know, if the defendant wants to represent himself, that's his business. But, you know, there's no affirmative duty on the part of the district court to, or if he wants to raise his own competency, I suppose. Didn't he have standby counsel? Did standby counsel raise a question of his competency to represent himself? He did have standby counsel, and standby counsel did not raise that issue. But the court did note in Edwards that these trials should affirm the dignity of the defendant and not humiliate. Well, in this case, he cross-examined. He examined fine. I mean, it looked less bad than some lawyers have seen. His cross-examination was pretty subpar. But that's what happens when you represent yourself and you're a layman. You know, you sometimes do a bad job. But the question is not whether he – I mean, he didn't address the witnesses as Jesus, or, you know, he didn't think that he was Socrates on trial, right? You know, he knew what the proceedings were. He asked questions that were reasonably on point. He had made an opening statement. I think he had a summation as well that was reasonably coherent. The end of his direct examination was particularly humiliating, though, where he had seven straight questions, relevant objections sustained, questions that he was trying to ask himself. You've never seen a lawyer get seven successive objections sustained? I've never seen a lawyer – I did it two weeks ago. I've never seen a lawyer end an examination with – I mean, I sustained several objections. I mean, I've – I certainly have had – I've seen several objections get sustained, but I've never seen a lawyer end an examination by saying, I feel rejected now again. I have nothing else to say. I mean, this was – it was pretty pathetic, the way that his direct examination ended. And that actually dovetails with the second issue. Well, what does that have to do with mental competency? I mean, I have seen lawyers use it as a technique. Once they realize things are going badly, get the judge to slap them down repeatedly and then roll their eyes and sit down so that the jury thinks they're being picked on. Tell me, is there a case where we've reversed because the judge let somebody represent himself and should not have? Ferguson, which predated Edwards. Before Indiana. But the salient distinction with this case, as opposed to all the others where the court has affirmed, is that this judge never expressly recognized the Edwards holding. He never told – he never made a finding that this defendant was competent to represent himself at trial. The defendant in Johnson and the other cases I cited where this court affirmed those convictions, the district court actually made the required inquiry, made express findings that the individual was competent to represent himself. The trial judge here never did that. But just briefly, I see I'm running out of time. With respect to the issue of the Feretta waiver, there were two major defects with that Feretta waiver. The first was that Mr. Bravo never acknowledged that he understood that the rules of evidence would apply to him. He engaged in a long colloquy with the trial court that ended with, I think, Mr. Bravo having the wrong impression that the court was there to help him have a fair trial and would assist him in the presentation of his evidence. Why do you say that? Didn't the judge tell him exactly the opposite? He's not there to help him? Actually, not exactly, Your Honor. What did the judge say to him? The judge – the way the colloquy ended, it's too long for me to read it all to you, but there were, I believe, five questions. And at the end of it, he asked Mr. Bravo again if he understood. And Mr. Bravo said, no, I'm hoping to get a fair trial. No, that's not what I'm asking you, though. Didn't Mr. Bravo say something along the lines, I expect you to work with me and help me, and the judge made it clear, no, that's not his job? Right. But Mr. Bravo never acknowledged that he understood. He doesn't have to acknowledge it. He has to be told it. I mean, the judge told him in no uncertain terms he was not going to be his coach. Well, at the end of that colloquy, though, the judge ended it by saying that he was there to see that Mr. Bravo got a fair trial. Which is true, isn't it? Well, except that I think Mr. Bravo, it's pretty clear that Mr. Bravo believed that that, or understood that to mean that he would get some help from him in terms of presenting his evidence. No, that's one of the pitfalls when you're not a lawyer and you take on the job of being a lawyer. One of the pitfalls is that you misunderstand the concept of what it means to have a fair trial. A fair trial means the judge doesn't take your side, is not there to marry you. That's what lawyers understand to be a fair trial. He chooses to take on that job. That's his burden. I mean, the flip side of it is if the judge denies it, then we reverse because they say, look, the guy obviously was told and there was no basis for denying him a right of self-presentation. And we blame the district judge for failing to let him represent himself. So it's not a one-way street where the judge can say, no, I'm not convinced. We know that from Fureta itself. I see I just have about 30 seconds left. You can keep it. We'll hear from the government. Good morning, Your Honors. May it please the Court. The Court should upheld the conviction. Can I get your name, please? Jennifer Ware. Ware. Thank you. The Court should uphold the conviction of Mr. Bravo Mendoza. Here the district court did a Fureta colloquy that met all the standards under the case law. The district court told the defendant about the charges, the nature of the charges, the penalties, and the dangers and disadvantages of self-representation. The defendant had a clear understanding of those, although he might not have agreed with them. I don't know about clear. Everything he said was kind of ridiculous. The uniform commercial code, what was it, 1201 or something like that? Are you familiar with things? Yes, I've studied the Book of Laws and the Book of God, and I've done my homework. It was all out there. Did the judge understand his discretion to allow him to defend himself or not? I think the record here is clear that the answer is yes. The judge took into account the right to represent himself and ask the questions under Fureta and ask the defendant, do you understand the nature of the charges? I know we presume that a judge knows the law, but just for my own reassurance, can you point me to something where the judge says, I understand I have discretion to let you represent yourself or not? Well, he does say in there that, and he gave him, he gave Mr. Mendoza many times in the record that to have counsel. And basically, he said in the record he made inquiries into his education, into the defendant's education. The defendant said he had a high school education and took some college. And then also based on the colloquy, he asked the question, do you understand the nature of the charges? The defendant said, yes, but I don't consent to them, which shows that he had an understanding, an understanding that he didn't consent. The judge also was presented with a defense. Yeah, I agree. That's just a common reaction of laymen. They can't accuse me of that. Exactly. That sort of thing. And in fact, when he was told about the dangers and disadvantages of self-representation, he said he Tell me about something else. I can't remember this, and I frankly did not look this up in the excerpts, but I remember something in the briefs about how the judge would not let him testify by narrative. Instead, he had to ask himself questions and then answer his own questions, kind of like in that Woody Allen movie. Is that true? Yes, that is exactly what happened at trial. He was to ask the question, and then that way the court could determine whether or not the questions were I think it was bananas, and it makes a person look nuts even if he isn't. Actually, in the way that it played out, he kept a quorum within the courtroom, therefore the testimony could be narrowly tailored to the issues. And two, the defendant had standby counsel, and he was told at the close of the government's case that he could use that standby counsel in any way. In fact, during the trial, the defendant did use standby counsel to help him make a Rule 29 motion and to file an appeal. All of those things are consistent with somebody who is competent to represent themselves. In fact, this defendant had a valid defense. Unlike in Johnson, who talked about UCC gibberish, here the defendant said he was born in the United States. That is completely a valid defense. He took that defense from day one and argued it in opening and in closing, and he even got some helpful admissions in cross-examination. He got the agent to admit that he didn't have expertise in signatures, and he argued in summation that the government's case was circumstantial. All of those things show that he was more than competent. And on this record, under Edwards, the judge did the right thing. He let the defendant represent himself, which was his right. And, yes, he might have been foolish to represent himself, but it does not make him incompetent. What is a judge supposed to do when, in your view, if he notices that a defendant who wants to represent himself is saying nonsense, is talking nonsense, does the district judge have discretion to order a competency hearing or? Well, in this case, the defendant was not spewing nonsense. In fact, he was, in my opinion, and I think the government ---- You're fighting the question. You're fighting the questions. Did you hear my question? I said, what if, okay? You are supposed to answer the if part, not the what part. So you don't get to sort of argue about the what part. Okay? So I'm giving you the what. The what is the judge notices the defendant talking nonsense. You got that part? I got it. Okay. You don't argue about that. We're not going to discuss that. And the if part is, what can he do? Can he order a competency hearing? Is he entitled to order a competency hearing? Does he have discretion? If the district court feels that there's a ---- he has a substantial doubt as to the competency of the defendant, he can sua sponte order a competency hearing, as in Dreyer, under the Dusky standard. But here, nobody is claiming ---- A competency to represent himself. Oh, the competency to represent himself? There is ---- Not a competency to stand trial. Okay. You're fighting the what again. Right. Okay. Let me make sure you understand the question. Okay? So the judge determines that the ---- has no reason to think the defendant is not competent to stand trial. He is now at the Faretta stage. And he notices the defendant saying stuff that's sort of gibberish, nonsense, sort of weird. What does he have? Does the judge have discretion to order a competency hearing to determine he's competent to represent himself? Not competent in the sense of being a lawyer, but competent in the sense of being mentally competent. So does he have discretion? The answer would be, under the case law, he's not required to have a competency hearing. And does he have discretion, sua sponte, based on if he's just talking nonsense? The answer would be yes, he would have discretion to do so. That's a long ways of answering yes. I mean, that's what happened in Johnson, right? I mean, the district judge was worried about whether these characters could, you know, effectively represent themselves. And he had them seen by a psychiatrist. It wasn't a full-blown competency hearing, but ---- And in that case, the psychiatrist ---- So the answer is yes? The answer is yes. Okay. Now, what evidence do we have here that the judge was aware that he had this discretion? Well, the judge went in and asked the defendant about his background. And in the reporter's transcript, the district court said, I think you are competent to represent yourself. Competent to represent yourself. But you're saying there's a difficulty with that ambiguous nature of the word competent. As competent as are you, do you have the wherewithal to represent yourself? And the other thing is, are you mentally competent? They're different words. They're the same word for very different concepts. And let me ask my question one more time. This time, listen to the question. Answer that question, not something else. What evidence do we have that the district judge in this case was aware that he had the discretion to order a mental competency determination as to whether he was mentally competent to represent himself? Because in the record, the district court said, I think you're competent to represent yourself. If he was talking about competency under Dusky, he would say, I think you are competent to understand the proceedings and to assist in your defense. Here, during the phoreticology, the district judge asked questions about the defendant's background and then said, I think that you are competent to represent yourself. You understand that there are two competencies there that he's talking about. One of them is, do you have the speech ability? Do you have just enough ability as a layman to actually do this job that Laura does? The second has to do with mental competence. They're the same word, but they're different concepts. Is there anything the judge says that suggests that he is aware that he has the discretion to order a mental competency, psychiatric competency determination? Other than the fact that the district court said that I think that you are competent and the fact that the record as a whole shows that the district court didn't feel that there was any reason to do so. In fact, as this panel pointed out, standby counsel didn't even bring up the fact that defendant should be tested for competency, nor did the other two lawyers that used to represent him, nor did the probation office who talked to the defendant afterwards during his pre-sentence report where the defendant was noted to be coherent. So your answer is nothing? Nothing in the record. Yeah, I asked a question, and you've been talking a lot, but you haven't answered the question I asked. Is there anything in the record to suggest that the judge knew that he could order a mental competency hearing to determine that he's mentally competent to represent himself? Other than the fact that he said, I think you are competent. No, no, not other than.  I think you are competent, and also when he asked right before the sentencing hearing, he inquired a standby counsel about defendant's competency and said, do you have any concerns at all? Which shows that the district court didn't have any concerns about competency before that time. The judge never said, I know I can have these guys examined by a psychiatrist, but I'm going to choose not to do it. Isn't that right? Absolutely. But Johnson had been decided a year or so before. It was already on the books. True, isn't that true? Correct. Correct. But the case law does not hold that the district court has to hold a separate hearing for competency. Just because somebody wants to represent themselves doesn't mean the district court has to have a competency hearing. Such a result would cause a lot of unnecessary competence. Why shouldn't the – I'm not suggesting this. I'm just asking a speculative question. What would the reasons be not to hold a competency hearing on ability to represent oneself in every case where a defendant says, I wish to represent myself and not be represented by counsel? As pointed out in the dissent in Dreyer, that would cause needlessly unnecessary proceedings, which would cause a lot of unnecessary expense. Because the bottom line is a competency hearing is not held for anybody who decides to go to trial just because they might not have a great defense. I mean, that is a slippery slope. Well, the idea is it's generally stupid for somebody to represent himself. And you wonder always whether somebody who appears to be doing something that stupid is crazy. And that's why you would hold a hearing. Agreed. And that's why, obviously, this Court has decided that those are the reasons we do a phoreticoloquy. And this Court has decided that based on that – So basically the phoreticoloquy is the filter. Absolutely. And Edwards doesn't change that. And Edwards is clear that it doesn't change that. So the bottom line is that's what this Court has determined, that once the defendant is told about the dangers of self-representation, then he takes on the perils of self-representation. Remember, the right to represent yourself is a right that every defendant can take. And district courts need to uphold that right. Well, we will be in front of you again saying, why didn't the defendant – why wasn't he allowed to represent himself? Well, I don't know. If you hold a competency hearing and you have a psychiatrist saying he's nuts, I think it would be very hard to reverse a misjudge, deny him his forever rights. But it is sort of a crazy thing to do, to be facing years in prison and decide that without any college, without any law school training, you're going to go up against an experienced prosecutor. It is sort of nuts, isn't it? Albeit foolish, it does not mean that the defendant is not mentally confident to do so. But oftentimes being foolish is, in fact, the result of mental incompetence. That is sort of one of the reasons people do foolish things sometimes. One of the reasons. But there are many other reasons to do foolish things. I suppose if you had no defense whatsoever, the prosecutor had you cold, representing yourself, acting crazy, and getting a second trial, when maybe his witnesses will have become difficult to find, could be a good strategy. Absolutely. And here the defendant was more than competent to represent himself. And in light of this record, he did a pretty good job. Okay. Thank you. You have a little time left, Roberto. We'll give you a minute. Thank you, Your Honor. It's just a couple of quick points. First, I misspoke when I entered my appearance. My client will be unhappy with me if I do not correct. His name is Daniel G. Bravo, not Gerardo Bravo, so my mistake on that. Secondly, with respect to the fact that he was forced to testify in a narrative, as Your Honor mentioned, this was an additional disadvantage of self-representation. It was not part of the Feretta Colloquy. Mr. Bravo should have been on notice that he was going to be required to ask himself questions in this dramatic interpretation type of format, and he was not. So that, I think, is a little bit of a problem. He could have had standby counsel ask him questions. That record is silent as to that, Your Honor, I guess. I hadn't ever thought of that, but the record is silent as to that. He did have standby counsel, but he's standby counsel. Well, you say it's silent. Doesn't silent cut against your claim? Well, I mean, we know that he asked himself questions on direct examination without any help from his standby counsel. And we know that the Court did not suggest to him that he use standby counsel. But the judge is not his friend. Yes, Your Honor. I finally just wanted to, with respect to Your Honor's questions about where is there evidence in the record that the district court acknowledged his discretion under Edwards, and it's just not there. It's actually strongly implied that the trial judge viewed Mr. Bravo's right to represent himself as absolute. Thank you. Thank you.
judges: Kozinski, Kleinfeld, Silverman